**Curtis Lee MORTON, Plaintiff,**

v.

**Patricia Ann MEAGHER, Defendant.**

No. Civ.A. 3:01CV173.

United States District Court,
E.D. Virginia,
Richmond Division.

Oct. 19, 2001.

Donald J. Gee, The Gee Law Firm, P.C., Petersburg, Virginia, for plaintiff.

William N. Watkins, Sands, Anderson, Marks & Miller, Richmond, Virginia, for defendant.

## MEMORANDUM OPINION

PAYNE, District Judge.

Pursuant to 28 U.S.C. § 636(b)(1)(B), this action was referred for Report and Recommendation on the merits of the defendant's motion to dismiss. The Report and Recommendation was filed on July, 23, 2001, and the defendant timely objected to the it.

### STATEMENT OF FACTS

Curtis Lee Morton, a resident of Virginia, was struck by an automobile while driving in Chesterfield County, Virginia. Patricia Ann Meagher, a resident of Mary-

land, was the driver of the vehicle that struck Morton. The automobile collision occurred in Chesterfield County, Virginia, on February 19, 1998.

In Virginia, there is a two year statute of limitations for bringing personal injury actions. *Code of Virginia*, § 8.01–243. On February 17, 2000, two days before the expiration of the applicable statute of limitations, Morton filed a Motion for Judgment in the Circuit Court for the City of Richmond, Virginia, against Meagher and her employer, Consolidated Freightways ("Consolidated"), on a theory of negligence. Morton sought damages in the amount of $500,000.00 plus interest and costs for personal injury, medical and related expenses, loss of earnings and earning capacity, and property damage. In a subsequently filed Amended Motion for Judgment, Morton increased the amount of his damage claim to $2,000,000.00 plus interest and costs.

Under Virginia law, a plaintiff has one year from the date of filing a Motion for Judgment in which to effect service of process. *See Rules of the Supreme Court of Virginia*, Rule 3.3. On February 6, 2001, Morton's counsel mailed copies of the Amended Motion for Judgment to Meagher, a non-resident, and to Consolidated, a non-resident corporation. To obtain personal jurisdiction over the out-of-state defendants, Morton served the Commissioner of the Division of Motor Vehicles (the "Commissioner"), as permitted by the *Code of Virginia* Section 8.01–326.1. Under that statute, the Commissioner is a statutory agent for issuance of process on non-resident defendants involved in automobile accidents on the highways in Virginia. However, under § 8.01–326.1, service on that statutory agent is not effective until the Commissioner files a Certificate of Compliance with the Clerk of the Court in which the action is pending. Morton served the Commissioner on February 15, 2001; and, on February 21, 2001, the Commissioner filed the Certificate of Compliance in the Circuit Court of the City of Richmond. The final date of the prescribed time period within which properly to effect service on the defendants was February 17, 2001.[1]

While the action was pending in state court, Meagher filed a Motion to Quash and, as part of the prayer for relief therein, sought dismissal of the action for the reason that service had not been completed within the time permitted under Rule 3.3 of the *Rules of the Supreme Court of Virginia*. Thereafter, on March 22, 2001, the action was removed to this Court.

The Report and Recommendation on Meagher's motions concluded that service had been initiated by Morton within the applicable limitation period and that the failure of service was the Commissioner's error, not Morton's. For those reasons, the Report and Recommendation also concluded that the defective service of process could be cured under 28 U.S.C. § 1448, and that it was in the interests of justice and judicial economy to allow Morton to effect such a cure. Meagher timely filed an objection to the Report and Recommendation. Having considered the record, the Report and Recommendation, the objection and the further briefing on the objection, the Court finds that Meagher's Objection should be sustained and, as a result, the Report and Recommendation will not be adopted.

## DISCUSSION

■ The validity of service of process in an action before it is removed to federal

---

1. On May 17, 2001, Consolidated was dismissed as a defendant, because it was an improper party.

court is determined by the law of the state pursuant to which service was made. *See, e.g., Brazell v. Green,* 67 F.3d 293, 1995 WL 572890 (4th Cir.1995) (unpublished); *Osborne v. Sandoz Nutrition Corp.,* 67 F.3d 289, 289, 1995 WL 597215 (1st Cir. 1995) (unpublished); *Lee v. City of Beaumont,* 12 F.3d 933, 936–37 (9th Cir.1993); *Allen v. Ferguson,* 791 F.2d 611, 616 n. 8 (7th Cir.1986); 4A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil 2d* § 1082 (1987, Supp. 2001). Under Virginia law, the applicable provision setting the time within which properly to serve a defendant is Rule 3.3 of the *Rules of the Supreme Court of Virginia,* which states:

> No judgment shall be entered against a defendant who was *served with process more than one year after* the *commencement of the action* against him *unless* the court finds as a fact that the *plaintiff exercised due diligence* to have timely service on him.

Rule 3.3 (emphasis added).

■ This action was filed against Meagher when the original Motion for Judgment was filed on February 17, 2000. Therefore, under Rule 3.3, the last day that service could be properly effectuated was February 17, 2001. It is undisputed that the filing of the Certificate of Compliance by the Commissioner, the final piece in the calculus of effective service of process when serving a defendant through the Commissioner as statutory agent for service of process, did not occur until February 21, 2001, four days beyond the time allowed for effecting valid service under Supreme Court of Virginia Rule 3.3.

Thus, under the undisputed facts and the unambiguous terms of Rule 3.3, there can be no judgment against Meagher in this action unless the Court "finds as a fact that [Morton] exercised due diligence to have timely service on [Meagher]." Morton has not even argued that service was effected timely or that she exercised due diligence to serve Meagher. And, indeed, the record is devoid of any evidence of due diligence.

Instead, Morton relies on the reasoning in *McIntyre v. Wright,* 1993 WL 946375 (Va. Cir. Ct. December 16, 1993) for the proposition that service incorrectly effectuated by a statutory agent may be perfected at a later date. In *McIntyre,* the Commissioner had been requested to serve an out-of-state defendant who had been involved in an automobile collision. The Commissioner failed adequately to serve the defendant because he forwarded process to a wrong address in Virginia where service had been unsuccessfully attempted at least once before, instead of sending it to the last known postal address or the address provided by the plaintiff, as directed by the applicable state statute. *See Code of Virginia,* § 8.01–326.1. Rather than dismissing the action or granting the motion for default judgment that had been made by the plaintiff, the state circuit court concluded that the defect in service could and should be cured because the defect was not the plaintiff's fault. The Report and Recommendation found that reasoning persuasive and thereupon applied the rationale of *McIntyre* to the facts of this action.

However, the facts in *McIntyre* are far different than the facts presented here. For example, the record in *McIntyre* appears to demonstrate the exercise of due diligence by the plaintiff (who had attempted service on previous occasions) and clear fault by the Commissioner (who did not serve at the last known address which the plaintiff had provided). Moreover, in *McIntyre* the timeliness of service does not appear to have been at issue. Certainly, it was not decided. Here, service is at issue and it undeniably was not timely. Moreover, here, the plaintiff exercised no

diligence at all. Indeed, the request for service was made on the Commissioner two business days (February 15, 2001) before the time for effecting service (February 17, 2001) expired.[2] Nothing in the record reflects that the plaintiff even informed the Commissioner of the proximity of the deadline.

It is not reasonable to expect that the Commissioner would file the requisite Certificate of Compliance within one day after receiving the request for service. Thus, on this record, the Commissioner did not incorrectly effectuate service, he simply did not file the requisite Certificate of Compliance the day after his office was served. Instead, the Certificate of Compliance was filed the following week, four business days after the request for service was received and two business days after the last date on which effective service could have been achieved under Rule 3.3.[3]

The court, in *McIntyre*, was lenient at least in part because the plaintiff had instructed the Commissioner on the proper last known address and the Commissioner incorrectly failed to follow that instruction. Here, the plaintiff simply did not allow the Commissioner enough time to properly fulfill the duties imposed by the statute before the expiration of the prescribed time limits. Thus, even if *McIntyre* supplied the proper rule of decision (which it does not), the facts here would not fall within its reach.

■ On this record, service was not effected within the time frame prescribed by state statute and, therefore, the case was "dead" before it was removed to federal court. The Report and Recommendation even concludes, and correctly so, that a Virginia state court would have dismissed the case had it not been removed.

It is contrary to the correlative doctrines of comity and federalism to allow a case that would be dead under state law to be revived upon removal by a federal court applying the same state law that would have led to the termination of the case in the state court. Nonetheless, Morton argues that, once a case is removed, 28 U.S.C. § 1448 (hereinafter " § 1448") allows a federal district court to correct deficient service.

In pertinent part, § 1448 provides:

In all cases removed from any State court to any district court of the United States in which any one or more of the defendants has not been served with process or in which the service has not been perfected prior to removal, or in which process served proves to be defective, such process or service may be completed or new process issued in the same manner as in cases originally filed in such district court.

■ Thus, by virtue of § 1448, where service in state proceedings is incomplete or defective in removed cases, the service may be completed or new service issued following removal. However, § 1448 does not retroactively extend the time limits prescribed by state law in cases where service was untimely *before* the action is removed to federal court. Nothing in the text, or the legislative history, of § 1448 permits it to serve as a phoenix for the ashes of an action that could not have survived in the state courts. "Implicit in our conclusion is that § 1448 cannot be utilized to breathe jurisprudentially life into a case legally dead in state court." *Witherow v. Firestone Tire & Rubber Co.*, 530 F.2d 160, 168 (3d Cir.1976). *See also Marshall v. Warwick*, 155 F.3d 1027, 1033

---

**2.** February 17, 2001 was a Saturday.

**3.** Because February 17, 2001 was not a business day, it is arguable that the last day for

effecting service was the next business day, February 19, 2001.

(8th Cir.1998) ("We do not believe that this section can 'resurrect' a removed diversity case which would have been dismissed as time-barred had it remained in state court."); *Osborne v. Sandoz Nutrition Corp.*, 67 F.3d 289, 289, 1995 WL 597215 (1st Cir.1995) (unpublished) ("Applying Section 1448 would ignore [plaintiff's] procedural deficiency in state court, and effectively penalize [defendant] for exercising its removal right. We decline to use Section 1448, as the district court noted, to 'breathe jurisprudential life in federal court to a case legally dead in state court.'" (quoting *Witherow*, 530 F.2d at 168)); *Four Keys Leasing & Maintenance Corp. v. Simithis*, 849 F.2d 770, 774 (2nd Cir.1988) ("it would be a perversion of the removal process to allow a litigant who is subject to a final judgment to remove that final judgment to the federal courts for further litigation. If a claim that is time-barred under state law cannot have life breathed into it by being removed to federal court...." (citing to *Witherow*, 530 F.2d 160)).

In an alternative argument, Morton relies on *Wright v. Xerox Corp.*, 882 F.Supp. 399 (D.N.J.1995) and *Brazell v. Green*, 67 F.3d 293, *1, 1995 WL 572890 (4th Cir. 1995) (unpublished), for the proposition that, although service was untimely, Meagher was on notice of the action because a copy of the Motion for Judgment had been sent to her on February 6, 2001, and thus § 1448, with such notice, allows a plaintiff to perfect service.[4] Neither

*Wright* nor *Brazell* are applicable for several reasons.

First, the court in *Wright* considered, as a portion of its overall analysis and not, as Morton suggests, as the basis for its reasoning, the fact that the defendant had been given notice of the pending action and was not prejudiced by not properly being served. Second, in *Wright*, unlike this case, the time period for service had not expired. Moreover, there is no reason to believe that the court in *Wright*, a district court within the Third Circuit, intended to apply its reasoning to a legally dead case in light of the controlling law in *Witherow*, a prior decision of the Third Circuit.

Nor is *Brazell v. Green*, 67 F.3d 293, *1, 1995 WL 572890 (4th Cir.1995) (unpublished), of any help to Morton because the half page unpublished opinion in *Brazell* discloses facts that squarely fall within the ambit of § 1448; and because there is no mention in *Brazell* of untimely service. Thus, the issue presented here was not before the Court of Appeals in *Brazell*.

Finally, the Supreme Court of the United States recently has stated that:

> Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant. In the absence of such service (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant. (citation

---

4. In responding to Meagher's objections to the Report and Recommendation, Morton, for the first time argues that service may have been proper because a copy of the Motion for Judgment was mailed to Meagher on February 6, 2001. However, the argument that service might have been proper was not part of the analysis of the Report and Recommendation. Instead, the Report and Recommendation states in footnote 3 that: "The Plaintiff's Response asserting that a copy of the lawsuit was mailed to the Defendant on February 6, 2001, states that a certificate of service confirms this representation. The court assumes that counsel is referring to the notary certification contained on his affidavit describing his efforts to serve the Defendant within the state." There is no indication in the record or otherwise that service of process was completed and such proof would have otherwise put an end to the Magistrate Judge's inquiry quickly and simply. The belated presentment of this argument forecloses its consideration.

omitted). Accordingly, one becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend. See Fed.Rules Civ.Proc. 4(a) and 12(a)(1)(A). Unless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights. (citations omitted).

*Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 344–45, 119 S.Ct. 1322, 1324, 143 L.Ed.2d 448 (1999). Thus, in perspective of *Murphy Brothers,* because the *sine qua non* of personal jurisdiction is actually being served, *Wright* and *Brazell,* even if they were otherwise applicable (which they are not), are inapposite. In this case, service of process was not effectuated and is now time-barred.

In sum, the controlling state law is clear: the plaintiff must have effectuated service on the defendant within a year of filing, and that feat was not accomplished. The only relief available to a plaintiff from the consequences of untimely service is found in that part of Rule 3.3 which provides excuse if "the court finds as a fact that the plaintiff exercised due diligence to have timely service on [a defendant]." As explained above, Morton has not invoked the savings clause of Rule 3.3. Nor could she on this record.

## CONCLUSION

Rule 3.3 was intended to allow the diligent plaintiff time to effectuate service. It was not intended to allow the filing of an action in state court merely to marinate for an additional year before hailing the defendant to answer the claims against her. The rule which Morton argues would make the federal courts complicit in allowing the plaintiff to benefit from a lack of diligence. Where, as here, an action is legally dead before it is removed, § 1448 cannot be used to resurrect it.

For the foregoing reasons, the Defendant's Objection to the Report and Recommendation is sustained and the Report and Recommendation is not accepted. There is no need for oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is so ORDERED.