**David L. LAWRENCE, Plaintiff,**

v.

**Thomas HANSON, Defendant.**

**No. Civ.A. 3:01CV00107.**

United States District Court,
W.D. Virginia,
Charlottesville Division.

April 22, 2002.

---

**39.** Second Notice of Other Crimes, Wrongs or Acts, Feb. 22, 2002.

**40.** *See* Fed.R.Evid. 404(b).

**41.** *Id.*

John Garland Berry, Madison, VA, plaintiff.

John Adrian Gibney, Jr., Robert A. Dybing, Shuford, Rubin & Gibney, PC, Richmond, VA, for defendants.

*MEMORANDUM OPINION*

MICHAEL, Senior District Judge.

Before the court is the presiding United States Magistrate Judge's January 17, 2002 Report and Recommendation regarding the plaintiff's December 10, 2001 Motion for Voluntary Dismissal and the defendant Thomas Hanson's October 24, 2001 Motion to Dismiss. Also before the court is the Magistrate's January 17, 2002 non-dispositive order granting the plaintiff's request for a jury trial. The defendant filed objections to both the Report and Recommendation and the January 17, 2002 non-dispositive order. Accordingly, the court has performed a *de novo* review of the Magistrate's Report and Recommendation, and has reviewed for clear error the Magistrate's order granting a jury trial. *See* 28 U.S.C. § 636(b)(1)(A) & (B). Having thoroughly considered the entire case and all relevant law, the court shall GRANT the plaintiff's motion for voluntary dismissal, DENY as MOOT Hanson's motion to dismiss, and AFFIRM the Magistrate's order granting a jury trial.

I.

The plaintiff, David L. Lawrence, had been an employee of the Emergency Communications Center ("ECC"), which manages the dispatch of emergency calls for Albemarle County, Virginia, the City of Charlottesville, Virginia, and the University of Virginia, for approximately 13 years when he was discharged on or about October 2, 1998. On October 2, 2000, Lawrence filed suit in the Circuit Court for the City of Charlottesville against his former supervisor, Thomas Hanson ("Hanson"), the ECC, and the County of Albemarle ("County") (together, the "defendants"), seeking damages and other relief for his discharge. Count one of the Motion for Judgement ("complaint") seeks relief on the basis that the discharge was "under color of state law and local law in violation of 42 U.S.C. § 1983." (Compl. at 4.) Counts two and three seek relief under state law theories of wrongful termination and breach of contract, respectively. The record indicates that, while Hanson was served with the state court Notice of Motion for Judgement, the ECC and County were not served.

On October 22, 2001, Hanson filed a Notice of Removal, and on October 23, 2001, the case was removed to this court. On October 24, 2001, Hanson filed an "Answer and Affirmative Defenses" and a Motion to Dismiss the state law charges against him, and on October 30, 2001, the

case was referred to the Magistrate Judge. In December, 2001, the plaintiff filed a motion pursuant to Fed.R.Civ.P. 41 for voluntary dismissal of his claims against the ECC and County as well as a motion to amend his complaint to include a jury demand and a claim against Hanson in his official capacity.

By order dated January 17, 2002, the Magistrate Judge granted the plaintiff's motion to amend and request for a jury trial. The Magistrate Judge also issued a Report and Recommendation, in which he recommended that the plaintiff's motion for voluntary dismissal of the ECC and County be granted, and that Hanson's motion to dismiss the charges against him be denied as moot.

## II

Because the plaintiff's request for a jury trial is "not dispositive of a claim or defense of a party," this court shall affirm the Magistrate's order granting such request unless it is found to be "clearly erroneous or contrary to law." Fed. R.Civ.P. 72(a). Fed.R.Civ.P. 38(b) states, in part, that "any party may demand a trial by jury ... by (1) serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to the issue." Thus, in his order of January 17, 2002, the Magistrate noted that, because the plaintiff's motion to amend had been granted, the "plaintiff would have a right to ... demand [a jury trial] in his amended complaint under Fed.R.Civ.P. 38(b)."

▮ The court rejects the Magistrate Judge's observation regarding the application of Rule 38(b) in the instant case. It is generally held that a jury demand may be made in connection with the filing of an amended complaint only with regard to new issues raised in that complaint. If the amended complaint does not "raise a new issue, but merely changes the theory of the case or the relief requested, then a jury trial waived by a failure to demand in connection with the original pleading is not revived." 9 CHARLES ALAN WRIGHT & AR-THUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2320 (2d ed.1995); *see also Gamboa v. Med. Coll. of Hampton Roads,* 160 F.R.D. 540, 542 (E.D.Va.1995) (amendment of complaint to change name of employer-defendant and to increase punitive damage claim did not revive right to request a jury); *Jones v. Boyd,* 161 F.R.D. 48, 50 (E.D.Va.1995) (adding or changing defendants does not add new issues to the case). In this case, the proposed amendment to the plaintiff's complaint merely seeks "to make clear that Hanson is being sued both in his individual and official capacities." (Mot. for Leave to Amend at 1.) Thus, by the plaintiff's own admission, the proposed amendment involves a clarification rather than the introduction of a new issue and, for that reason, does not revive the plaintiff's waiver under Rule 38 by failure to demand a jury trial.

▮ While this court finds inappropriate the application of Rule 38(b) to the plaintiff's request for a jury trial, it should be noted that in his January 17, 2002 order, the Magistrate made clear that he was granting the plaintiff's request for a jury trial not under Rule 38(b), but rather, under Rule 39(b). The defendants argue that this was improper, as the Magistrate "re-cast" the defendant's motion, which was "based ... exclusively on FED.R.CIV.P. 81(c)" and Rule 38(b), under Rule 39(b). (Opp'n to R & R at 8.) However, contrary to the defendants' argument, a court can grant a jury trial under Rule 39(b) even if a party's motion for jury trial is brought under some other rule. Even if a motion for jury trial is, as it was in this case, made pursuant to Rule 38 unsuccessfully, a court may treat the motion as made under Rule

39(b). *See Law v. Law,* 160 F.R.D. 78, 79–80 (E.D.Va.1995) (treating as made Rule 39(b) a motion for jury trial made pursuant to Rule 38). Thus, this court finds no error in the Magistrate's decision to consider the plaintiff's jury trial request under Rule 39(b).

▮▮▮ Rule 39(b) states, in part, that "notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by jury of any or all issues." In *Malbon v. Pennsylvania Millers Mutual Insurance Co.,* 636 F.2d 936, 940 n. 11 (4th Cir.1980), the Fourth Circuit suggested that, when considering whether to exercise discretion under Rule 39(b), courts consider the following four factors: (1) whether the issues involved are more appropriate for determination by a jury or a judge; (2) whether the defendants would be prejudiced by the grant of a jury trial; (3) the timing of the motion for a jury trial; and (4) the effect a jury trial would have on the court's docket and the orderly administration of justice. Consideration of these four factors in the instant case supports the Magistrate's decision to grant a jury trial. This court generally places substantial faith in the ability of juries to resolve complex issues, and this case provides no reason to deviate from this norm. While a jury trial may at times strain the court's docket, the manner in which it benefits the effective administration of justice far outweighs the scheduling difficulties it can cause. Finally, because the plaintiff's request for a jury trial in this case was made well before the trial date, it is difficult for the defendants to argue that they are prejudiced by such a request. Indeed, the defendants make no such argument in their objection to the plaintiff's request.

For these reasons, the court finds no clear error in the Magistrate's decision to grant a jury trial under Rule 39(b).

### III.

On December 10, 2001, the plaintiff filed a "Motion for Order of Voluntary Dismissal" under FRCP 41(a)(2) as to his claims against the ECC and the County. The Magistrate Judge recommended that this court grant the plaintiff's motion and dismiss the claims without prejudice. (R & R at 8.) While the defendants state that they do not object to the dismissal of the plaintiff's claims, they do object to the Magistrate Judge's finding that, upon removal to federal court, the plaintiff was given a fresh 120–day period in which to serve the ECC and the County. The defendants argue that, because the plaintiff failed to provide service before expiration of the one year time limit set forth under Virginia law, the claims against the ECC and County were essentially "dead" prior to removal. In effect, the defendants argue that the ECC and the County should be dismissed with prejudice,[1] while the Magistrate Judge asserts that such dismissal should be without prejudice because the plaintiff was within a new, 120–day federal service period when he filed the Rule 41 motion.

▮▮▮ 28 U.S.C. § 1448 provides in part that:

> In all cases removed from any State Court ... in which any one or more of the defendants has not been served with process or in which the service has not been perfected prior to removal, or in which process served proves to be defective, such process or service may be completed or new process issued in the

---

1. "[T]he claims against [ECC and the County should be] forever barred." (Opp'n to R & R at 6.)

same manner as in cases originally filed in such district court.

Thus, where service in state proceedings was incomplete or defective, § 1448, in conjunction with Fed.R.Civ.P. 4(m), gives the plaintiff a 120 day period following filing of a notice of removal in which service may be completed or started anew. However, § 1448 does not specifically address cases, like the one now before the court, in which no service was made prior to the expiration of the state mandated time limit. The defendants argue that, because Rule 3.3 of the Rules of the Supreme Court of Virginia states, in part, that "no judgement shall be entered against a defendant who was served with process more than one year after the commencement of the action against him," the plaintiff's claims against the ECC and County were "dead" before this case was removed to federal court. Conversely, the plaintiff maintains that, irrespective of whether he timely served the defendant under state law, absent a formal order of dismissal by the state court, he was provided with a fresh 120–day term in which to provide service once the case was removed. The Fourth Circuit has not addressed this issue, and district courts within the Circuit have taken varying positions on the matter.

The plaintiff cites *Randolph v. Hendry,* 50 F.Supp.2d 572 (S.D.W.Va.1999) in support of his argument that Hanson's removal of this case restarted the time in which the plaintiff was required to serve process. In *Randolph,* the court held that, even where the plaintiff failed to provide service within the time period set forth under state law, "in an action removed to federal court from state court, Rule 4(m) of the Federal Rules of Civil Procedure requires the plaintiff to serve the summons and complaint on the defendant within 120 days from the filing of the Notice of Removal in the federal court." 50 F.Supp.2d at 579. While the court recognized that its

decision potentially prejudiced future defendants "who are not served within the time period set forth under state law and who therefore have state procedural justification for dismissal," it reasoned that "placement of the burden on that rare defendant's shoulders is proper ... because it is that defendant who makes the decision to remove the case to federal court and restarts the clock." *Id.* at 580.

Contrary to the holding in *Randolph* is *Morton v. Meagher,* 171 F.Supp.2d 611 (E.D.Va.2001), in which the Eastern District of Virginia held that § 1448 does not retroactively extend the time limits for service of process prescribed by state law where service was untimely before the action was removed. In *Morton,* the plaintiff filed a Motion for Judgement against the defendant in Virginia state court, but did not effect service of process within the time frame prescribed by Rule 3.3. Thereafter, the action was removed to federal district court. That court determined that, because "a Virginia state court would have dismissed the case had it not been removed," the case was "dead" under state law and could not be revived upon removal. *Morton,* 171 F.Supp.2d at 615.

The two approaches taken in *Randolph* and *Morton* are based on varying interpretations of the oft-stated principle that "state law governing service of process ... applies before removal, and ... federal law applies after removal." *Eccles v. National Semiconductor Corp.,* 10 F.Supp.2d 514, 519 (D.Md.1998). The court in *Randolph* interpreted this rule as placing a strict, temporal restriction on the application of state laws governing service of process. That is, under *Randolph,* once a case has been removed to federal court, state law governing service of process can no longer be applied, even to activity that occurred prior to removal. In contrast, the court in *Morton* held that state service

laws can still be applied after removal, but only to events that occurred before removal.

This court finds the analysis and outcome in *Morton* contrary to the very principles upon which it claims to be based. In support of its decision, the court in *Morton* stated that, "it is contrary to the correlative doctrines of comity and federalism to allow a case that would be dead under state law to be revived upon removal by a federal court." 171 F.Supp.2d at 615. In other words, if the state court would have dismissed the claim had removal not occurred, the federal court, in deference to state law, should do the same. However, the court presumed that, because service at the state level was not completed within one year of filing the action, dismissal was appropriate barring a determination that due diligence was exercised by the plaintiffs. This presumption fails to consider a significant aspect of Virginia state law, under which "the failure to serve a motion for judgement within one year, as required by Rule 3:3 and the comparable Equity Rule, does not restrict the plaintiff's privilege to nonsuit the action and recommence it within six months, thereafter obtaining judgement against the defendant." KENT SINCLAIR, VIRGINIA CIVIL PROCEDURE § 13.2 (3d. ed. Supp.2001) (citing *Waterman v. Halverson*, 261 Va. 203, 540 S.E.2d 867 (2001)). Thus, *Morton* employs only an abridged version of the state procedure it claims to simulate, and in so doing, deprives the plaintiff of one of its primary privileges under state law.

The more persuasive, and ultimately more judicially efficient, approach to the issue now before this court is the one employed in *Randolph*. *Randolph* clearly delineates between the application of state and federal jurisdiction—state law applies before removal and federal law applies after removal. This explicit rule is not only more easily implemented than the procedure advocated in *Morton*, but it is also more impartial. As the court noted in *Randolph*, it is the "defendant who makes the decision to remove the case to federal court and restarts the clock." 50 F.Supp.2d at 580. Thus, a defendant can avoid extending the time in which a plaintiff has to provide service by seeking dismissal at the state level before removing the case to federal court. By having the federal court evaluate the propriety of dismissal as if the case was never removed, *Morton* in effect saves a defendant from his own hasty decision. For this reason, the court favors the application of *Randolph* in the instant case, and as a result, shall dismiss the plaintiff's claims against the ECC and County without prejudice.

## IV.

■ On October 24, 2001 Hanson filed a motion seeking the dismissal of the plaintiff's state law wrongful discharge and implied contract claims. This motion was denied on the basis that it was rendered moot by the Magistrate Judge's understanding that the plaintiff intended to drop the claims at issue. On April 18, 2002, the plaintiff filed a motion for the voluntary dismissal of its implied contract and wrongful discharge claims against Hanson. The court will grant this motion under Fed.R.Civ.P. 41(a)(2) and thus dismiss without prejudice the plaintiff's state law claims against Hanson. For this reason, the defendant Hanson's October 24, 2001 motion to dismiss the same claims shall be denied as moot.

## V.

For the foregoing reasons, the Magistrate Judge's Report and Recommendation shall be accepted in part and rejected in part. To summarize, (1) the plaintiff's December 10, 2001 Motion for Voluntary Dismissal shall be, and it hereby is, GRANT-

ED, and the plaintiff's claims against the ECC and County shall be DISMISSED WITHOUT PREJUDICE; (2) Hanson's October 24, 2001 Motion to Dismiss shall be, and it hereby is, DENIED as MOOT. In addition, the Magistrate's January 17, 2002 order granting the plaintiff's request for a jury shall be, and it hereby is, AFFIRMED, and the plaintiff's April 18, 2002 motion for voluntary dismissal shall be, and it hereby is, GRANTED.

An appropriate Order shall this day issue.

### ORDER

Before the court is the presiding United States Magistrate Judge's January 17, 2002 Report and Recommendation on the plaintiff's December 10, 2001 Motion for Voluntary Dismissal and the defendant Thomas Hanson's October 24, 2001 Motion to Dismiss. Accordingly, the court has performed a *de novo* review of the Magistrate's Report and Recommendation. See 28 U.S.C. § 636(b)(1)(C). Also before the court is the Magistrate's January 17, 2002 order granting the plaintiff's request for a jury trial. Upon thorough consideration of the Report and Recommendation, all relevant memoranda of the parties, the entire record, and the applicable law, and for the reasons stated in the accompanying Memorandum Opinion, it is accordingly this day

ADJUDGED, ORDERED and DECREED as follows:

1. The Magistrate Judge's Report and Recommendation shall be, and hereby is, ACCEPTED;

2. The plaintiff's December 10, 2001 Motion for Voluntary Dismissal shall be, and it hereby is GRANTED, and thus the plaintiff's claims against the Emergency Communications Center and the County of Albemarle shall be, and they hereby are, DISMISSED WITHOUT PREJUDICE;

3. The plaintiff's April 18, 2002 Motion for Voluntary Dismissal shall be, and it hereby is, GRANTED, and thus the plaintiff's wrongful discharge and implied contract claims against Thomas Hanson shall be, and they hereby are, DISMISSED WITHOUT PREJUDICE;

4. The defendant Thomas Hanson's October 24, 2001 Motion to Dismiss is DENIED AS MOOT; and

5. The Magistrate's January 17, 2002 order granting the plaintiff's request for a jury trial shall be, and it hereby is, AFFIRMED.