**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

Nos. 10-1549, 11-1308

SOBEIDA FELIZ,
Administratix of the Estate of Santa Encarnacion,

Plaintiff, Appellant,

v.

BRIAIN MACNEILL, M.D.,
Defendant, Appellee,

UNITED STATES, on behalf of Tori Robinson, M.D.;
LAWRENCE HULEFELD, M.D.,

Defendants.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Richard Sterns, U.S. District Judge]

Before

Boudin, Circuit Judge,
Souter, Associate Justice,[*]
and Thompson, Circuit Judge.

Adam R. Satin, with whom William J. Thompson and Lubin & Meyer, PC were on brief, for appellant.
Joshua B. Walls, with whom Tamara Smith Holtslag and Taylor, Duane, Barton & Gilman LLP were on brief, for appellee.

August 22, 2012

---

[*]    The Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**SOUTER, <u>Associate Justice</u>**.  Plaintiff Sobeida Feliz contends that the district court abused its discretion in dismissing her malpractice and wrongful death claims against a doctor for failure to make timely service of process.  We conclude that dismissal well over a year after filing the complaint and after serial, unexplained delays without apparent effort to get service was within the district court's discretion, and therefore affirm.

I

As alleged in the pleadings, Dr. Briain MacNeill treated Feliz's decedent, Santa Encarnacion, six days before her death, after which Feliz sued on behalf of Encarnacion's estate in a Massachusetts state court, claiming that the cause of death was the negligence of Dr. MacNeill and the two other physician defendants in this case, Dr. Tori Robinson and Dr. Lawrence Hulefeld.  Feliz filed the complaint in Essex County Superior Court on January 29, 2009, and on the very day (April 30) that the time for service of process expired under the state rule she moved for, and received, a 90-day extension of time.[1]  That same day, she purported to serve the summons and complaint on Dr. MacNeill at his former office at North Shore Medical Center.  The papers were left with an assistant

_____

[1]Although several of Feliz's pleadings refer to a filing date of January 16, 2009, and MacNeill, on appeal, contends that the complaint was actually submitted on this date, the Superior Court docket shows that the case was filed on January 29.

-2-

to the Medical Center's general counsel, but the parties now agree that this was not proper service on the defendant. In fact, Dr. MacNeill no longer worked at the Medical Center or even resided in the United States, having moved to Galway, Ireland.

While under no apparent obligation to do so, his lawyers informed Feliz's counsel in June 2009 of their client's new residence, although they declined to accept service on his behalf. Feliz then tried unsuccessfully to serve MacNeill in Ireland by certified mail, and in August hired APS International Ltd., an international process service company, to make service in Ireland. APS took the first step towards serving MacNeill by sending a formal request to Ireland's central authority on international service of judicial documents.

After the extended time for service had expired (on July 29), MacNeill moved to dismiss the complaint, and Feliz responded by filing a motion to extend the service period by another 90 days. The court granted the motion to extend and set a hearing for November 12 on the request for dismissal. Two days before the hearing, the United States (on behalf of Dr. Tori Robinson) filed a notice of removal, transferring the case to the U.S. District Court for the District of Massachusetts.

On December 15, the period for service established by the superior court's second 90-day extension expired, and a month after that MacNeill sought dismissal for lack of service, in a motion

much like his earlier one filed in superior court. Opposing it, Feliz said that she had hired APS and described some difficulties in establishing the firm's agency in the matter to the satisfaction of the Irish authorities.[2] On February 1, 2010, the district court denied the motion to dismiss, but without prejudice, and granted Feliz another 45 days to make service (in addition to the 47 days that by then had already passed after the expiration of the state court's second extension).

On March 18, 2010, at the end of the new 45-day period, Feliz moved for another extension of time for service, this one for 90 days, and MacNeill renewed his motion to dismiss. The district court denied the request for further extension and dismissed the claims against MacNeill with prejudice. Feliz moved to vacate the dismissal order and supplied a new affidavit from an APS employee, recounting the steps APS had taken to serve Dr. MacNeill, but the district court denied the motion and on June 18 entered final judgment for Dr. MacNeill under Federal Rule of Civil Procedure 54(b).[3] Two months later, while pursuing this appeal, Feliz filed

---

[2]At the request of Irish officials, Feliz had (after an unexplained 19-day delay) asked the district court for a copy of an order designating APS as a Special Process Server. The officials then informed APS that they would not accept a copy and required an original order endorsed by the district court. The district court issued the order, which was eventually forwarded to the Irish authorities.

[3] In a case, like this, with multiple defendants, Rule 54(b) allows a district court to direct entry of a final judgment as to one or more, but not all, parties "only if the court expressly

-4-

another motion to vacate in the district court, saying that APS, through a local Irish authority, had served Dr. MacNeill on May 5, 2010.  The court denied the motion for lack of jurisdiction.

In sum:

1/12/2007: Dr. MacNeill allegedly treats Santa Encarnacion.

1/18/2007: Santa Encarnacion dies.

1/29/2009: Sobeida Feliz files a complaint in the Essex County Superior Court claiming in part that Dr. MacNeill's negligence contributed to Encarnacion's death.

4/30/2009: 90 days after filing the complaint, Feliz successfully moves to extend time for service by 90 days.  Feliz attempts to serve Dr. MacNeill at North Shore Medical Center.

6/12/2009 (approximate): Dr. MacNeill's lawyers inform Feliz that MacNeill is a permanent resident of Ireland. [134 days after complaint filed]

6/22/2009 (approximate): Feliz attempts to serve Dr. MacNeill in Ireland by certified mail. [144 days]

7/29/2009: Extended period for service expires. [181 days]

8/10/2009: Dr. MacNeill files motion to dismiss. [193 days]

8/21/2009: Feliz hires APS to serve Dr. MacNeill in Ireland. [200 days]

---

determines that there is no just reason for delay."  The district court did not make any express findings supporting its entry of final judgment.  Cf. Spiegel v. Trustees of Tufts College, 843 F.2d 38, 43 (1st Cir. 1988) ("If . . . the district court concludes that entry of judgment under Rule 54(b) is appropriate, it should ordinarily make specific findings setting forth the reasons for its order.").  We remanded for the court to supply its reasons for granting final judgment to Dr. MacNeill, as it did in a nine-page statement reaffirming its dismissal for failure to effect service and its denial of Feliz's motions to vacate.  Feliz filed a second notice of appeal, alleging error in the court's continued refusal to vacate its dismissal of the suit against MacNeill.  We consolidated that appeal, with the one from the dismissal itself.

-5-

8/27/2009: Feliz moves for second 90-day extension of time for service. [210 days]

9/16/2009: Court grants motion for 90-day extension. [230 days]

11/10/2009: United States removes case to the U.S. District Court for the District of Massachusetts. [285 days]

12/3/2009: APS informs Feliz that Irish authorities require documentation of APS's appointment as Special Process Server. [308 days]

12/15/2009: Second extended period for service expires. [320 days]

12/22/2009: Feliz requests an order appointing APS as Special Process Server, 19 days after learning that Irish authorities require it. [327 days]

12/29/2009: District court issues the order. [334 days]

1/15/2010: Dr. MacNeill files second motion to dismiss for lack of service. [351 days]

2/1/2010: District court denies Dr. MacNeill's motion and awards Feliz a third extension of time, 45 days, to make service. [368 days]

2/4/2010: After Irish authorities inform APS that an original version of the order is required and Feliz obtains such an order from the district court, original order is sent to Irish authorities. [371 days]

3/18/2010: Extended period for service expires. Feliz moves for a fourth, 90-day, extension of the service period. [413 days]

3/31/2010: District court denies petition to extend and dismisses the claims against Dr. MacNeill for failure to effect service. [426 days]

4/27/2010: Feliz files a motion to vacate the dismissal and a notice of appeal.

5/5/2010: APS (through a local agent) serves Dr. MacNeill in Ireland. [461 days after complaint filed]

5/6/2010: District court denies the motion to vacate.

6/18/2010: With the assent of both parties, the court enters a separate and final judgment as to Dr. MacNeill.

8/10/2010: Feliz files a second motion to vacate the dismissal.

8/26/2010: District court denies the renewed motion.

II

In reviewing the district court's dismissal of Feliz's claims against Dr. MacNeill, we examine the legal conclusions de novo, Cameron v. Otto Bock Orthopedic Indus., 43 F.3d 14, 16 (1st Cir. 1994), and applications of the law to the facts for abuse of discretion, Laurence v. Wall, 551 F.3d 92, 94 (1st Cir. 2008).

For the more than 280 days this case was pending in Essex County Superior Court, service was governed by Massachusetts Rule of Civil Procedure 4(j), providing that if "service of the summons and complaint is not made upon a defendant within 90 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed."  Although the case was eventually removed to federal district court, and the federal rules governing service of process applied after that, see 28 U.S.C. § 1448; Fed. R. Civ. P. 81(c), removal does not restart the clock for timely service or keep the district court from considering a plaintiff's previous delays, Osborne v. Sandoz Nutrition Corp., No. 95-1278, 1995 WL 597215 (1st Cir. Oct. 6, 1995) (per curiam); see Morton v. Meagher, 171 F. Supp. 2d 611, 615 (E.D. Va. 2001).

-7-

The federal rules give no specific time limit on service outside of the United States, see Fed. R. Civ. P. 4(m),[4] but courts have leave to dismiss for failure to serve abroad when a plaintiff is dilatory, see, e.g., Nylok Corp. v. Fastener World Inc., 396 F.3d 805, 807 (7th Cir. 2005) ("[T]he amount of time allowed for foreign service is not unlimited."); Trask v. Service Merchandise Co., Inc., 135 F.R.D. 17, 22 (D. Mass. 1991) (granting plaintiff 45 days for service in Japan under the Hague Convention). In arriving at a reasonable limit in a given case, Federal Rule of Civil Procedure 4(m)'s 120-day cutoff for domestic service can be instructive; here, for instance, more than double that time had already passed without service before the case was removed to federal court, and another 141 days would go by before the district court dismissed the complaint.

Dr. MacNeill thus calls this an easy case, even under the more permissive federal rules. He points out that Feliz did not resort even to the imprudence of trying to make service abroad by certified mail within 120 days of filing her complaint, and cites cases holding that when a plaintiff makes no good-faith attempt at

---

[4] Rule 4(m) provides: "If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. This subdivision (m) does not apply to service in a foreign country . . . ."

international service within 120 days, Rule 4(m)'s deadline should be the standard for dismissal, in the absence of good cause. <u>See, e.g.</u>, <u>USHA (India), Ltd.</u> v. <u>Honeywell Int'l, Inc.</u>, 421 F.3d 129, 134 (2d Cir. 2005); <u>Allstate Ins. Co.</u> v. <u>Punai Corp.</u>, 249 F.R.D. 157, 161-62 (M.D. Pa. 2008). While the record certainly supports his argument, we need not rely on this point alone to show that Feliz was as chargeably torpid as the dismissal order implies.

To begin with, so far as the record shows, Feliz did nothing to attempt service for 90 days, the entire period allowed under the Massachusetts Rules. Moreover, her counsel should have known that the first attempt, made by leaving the complaint with a legal assistant at North Shore Medical Center, was probably ineffective, as all now agree. And yet she apparently did nothing at all to find MacNeill or take another stab at service until over a month and a half later, after MacNeill's lawyers told Feliz's counsel that he had moved to Ireland.

While Feliz did act on that information, her chosen response (the failed attempt at service by certified mail) was at best of debatable validity under the Hague Convention, which applies to foreign service of process on a resident of Ireland. <u>See</u> <u>Golub</u> v. <u>Isuzu Motors</u>, 924 F. Supp. 324, 327-28 (D. Mass. 1996) (service by mail is invalid under the Hague Convention). <u>Compare</u> <u>Ackermann</u> v. <u>Levine</u>, 788 F.2d 830 (2d Cir. 1986) (the Hague convention allows for service by mail), <u>and</u> <u>Borschow Hospital &</u>

-9-

Medical Supplies, Inc. v. Burdick-Siemens Corp., 143 F.R.D. 472 (D.P.R. 1992) (same); with Bankston v. Toyota Motor Corp., 889 F.2d 172 (8th Cir. 1989) (the Hague Convention bars service by mail), and Cooper v. Makita, U.S.A., Inc., 117 F.R.D. 16 (D. Me. 1987) (same). Yet for two months after MacNeill's lawyers informed her of his whereabouts, she took no other action until she finally contacted APS in August of 2009, 200 days after she had filed her complaint. It then took Feliz's counsel and APS nearly five additional months to send the proper credentials to the Irish authorities.

This lackadaisical approach to the litigation is underscored by the fact that on three occasions Feliz allowed the then-authorized period for service to expire before so much as requesting an extension. On April 30, 2009, she sought her first extension the day the first 90-day period ran out. On the following July 29th the already-extended service deadline passed, and it was nearly a month later before Feliz moved for another 90-day reprieve. This further extension expired on December 15, and Feliz failed to obtain an extension from the district court until February 1, 2010, and then only after Dr. MacNeill had again moved to dismiss and some 47 days had gone by after the period for service had expired. Feliz was not merely dilatory in serving Dr. MacNeill; she treated court deadlines as if they meant nothing.

Despite this record of sluggishness both before and after removal of the case, on February 1, 2010 the district court granted Feliz 45 more days to make service, and again she failed to meet this deadline. When, on March 31, the district court refused a further extension and dismissed the claims for failure to serve process, 426 days had passed since the complaint was filed. To be sure, under the indeterminate federal rule, even a 426-day failure does not absolutely mandate dismissal, but it requires a powerful showing of good cause to excuse, and we agree with the district court that Feliz failed to show good cause for her extraordinary delay. At a general level she invoked the undoubtedly greater difficulty of service of process in a foreign country, and the greater time needed to get it done, than domestic service entails, and her opposition to dismissal recounted some of her difficulties in certifying APS as a Special Process Server. But she never explained, for example, why she waited 19 days after APS informed her that the Irish authorities needed an order appointing APS as a Special Process Server before she requested such an order from the district court, and she addressed none of the other delays in any detail. Nor, at the dismissal hearing, did she give any indication that APS or any local authority had attempted to serve Dr. MacNeill or that service was imminent.

When Feliz moved to vacate the dismissal, she submitted an affidavit from APS saying that making service in Ireland is

often time-consuming, and supporting her claims about the difficulty of certifying a Special Process Server. But the affidavit contained no substantial, new information, and even if it had, she said nothing to show that she could not have provided the same affidavit to the court before it ruled on the motion to dismiss and her final motion for extension of time. See Huertas-Laboy v. Rodriguez-Gonzalez, No. 90-1968, 1991 U.S. App. LEXIS 10778 (1st Cir. May 3, 1991) (per curiam) (rejecting a process server's affidavit accompanying a motion to reconsider, because it could have been filed before dismissal). The district court reasonably denied the motion to vacate.

The final events in the sequence are all of a sort with the rest. APS apparently served Dr. MacNeill in Ireland on May 5, 2010, 461 days after Feliz filed her complaint, and 48 days after the district court dismissed her claims against MacNeill. Even then, Feliz sat on her hands and failed to bring the information to the attention of the district court in her last ditch effort to save her claims until August 10, 2010, 97 days after the service took place.

Were anything more needed, it is telling that once APS had its credentials in hand, on February 4, 2010, it took only 90 days to get approval from the Irish authorities and to serve process on Dr. MacNeill. If she had attempted service with any diligence, Feliz probably could have served MacNeill within 120

-12-

days of filing her complaint, within the period of only one extension of time for good cause under the applicable state rule, and well outside the zone of danger of dismissal under Federal Rule 4.

**Affirmed.**