**Jacqueline RICE, Plaintiff,**

v.

**ALPHA SECURITY, INC.,**
**et al., Defendants.**

Case No. 1:12–CV–1025 (GBL/TCB).

United States District Court,
E.D. Virginia,
Alexandria Division.

April 16, 2013.

Mary Ann Kelly, Law Offices of Mary Ann Kelly, Fairfax, VA, for Plaintiff.

Douglas Conrad Meister, Meyers Rodbell & Rosenbaum PA, Riverdale, MD, Nicholas DelVecchio SanFilippo, Stephen W. Robinson, McGuireWoods LLP, McLean, VA, for Defendant.

### MEMORANDUM OPINION
### AND ORDER

GERALD BRUCE LEE, District Judge.

THIS MATTER is before the Court on Defendants' motions to dismiss for insufficient service of process. (Docs. 4, 6, 9.)

This case concerns Ms. Jacqueline Rice's employment discrimination claims against a hotel and the security firm the hotel contracted to provide services. Defendants' Motions present three issues before the Court.

The first issue is whether service is defective where Plaintiff took a nonsuit in Virginia state court one day before the expiration of the statutory one-year service period, the state court vacated the nonsuit order, upon Plaintiff's motion, seventeen days later, and Plaintiff perfected service one day after the nonsuit was vacated. The Court finds that service is defective in such a circumstance and thus grants Defendants' Motions on this issue. While the Virginia statute tolls the time for service during a nonsuit, such tolling does not apply where the nonsuit is later vacated. Vacating the nonsuit rendered the nonsuit order void. By vacating the nonsuit, rather than refiling the suit as contemplated by statute, the Court must consider the time for service to have continued as if Plaintiff never received the nonsuit order. As such, service was untimely and, in accordance with Virginia law, compels dismissal of this action.

The second issue is whether removal of this matter to this Court, after the one-year service period expired, provides Plaintiff additional time after removal to cure the failure to serve process on Defendants in accordance with Virginia law. The Court holds that removal does not provide Plaintiff additional time to serve process in a case that was procedurally "dead" prior to removal. State law governs procedural matters such as service for cases later removed to federal court. In Virginia, a case is effectively dead once the one-year period has passed without service. Removal cannot be used to resurrect claims no longer viable under state law. Therefore, the Court grants Defendants' Motions.

The third issue is whether the federal nature of Plaintiff's civil rights claims precludes state procedure from barring the action. The Court holds that the federal nature of Plaintiff's claims does not preclude the application of state service requirements. Virginia law does not burden or bar Plaintiff's federal civil rights action, as it actually provided Plaintiff a longer service period than if she had initially filed her Complaint in federal court. As such, the Court grants Defendants' Motions.

## I. BACKGROUND

Plaintiff Jacqueline Rice brings this action against Defendants Budget Motels, Incorporated and Waterloo Hospitality, Incorporated ("Comfort Inn Defendants") and Alpha Security, Incorporated, alleging sexual harassment and retaliation. (Am. Compl. ¶¶ 47–53, Doc. 5.) The facts pertinent to this Motion rely heavily on acts or omissions arising after the occurrence of her substantive claims.

Ms. Rice's claims arise from her work as a member of the night shift security team at a Comfort Inn hotel in Alexandria, Virginia. Ms. Rice alleges that Mr. Feysal Dahir sexually harassed her and created a hostile work environment. (*Id.* ¶ 21.) Ms. Rice reported his misconduct to Alpha Security, her employer, on November 19, 2006, and Dahir threatened to terminate her as a result. (*Id.* ¶¶ 23, 27–29.) On February 9, 2007, Ms. Rice filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against all Defendants, alleging repeated retaliation for her complaint. (*Id.* ¶ 41.) In May 2007, Alpha Security terminated Ms. Rice's employment. (*Id.* ¶ 45.) The EEOC investigated Plaintiff's discrimination charge and issued a "cause" determination in Ms. Rice's favor. (*Id.* ¶ 46.) This determination notice informed Ms. Rice of her right to file a federal employ-

ment discrimination lawsuit within ninety (90) days of the EEOC's finding.

Ms. Rice timely filed her original Complaint in the Circuit Court of Fairfax County, Virginia on August 15, 2011, but she did not serve the summons on Defendants. (Pl.'s Opp'n at 4, Doc. 12.) In August 2012, Ms. Rice took the following steps to serve process on Defendants:

- On August 3, 2012, prior to issuing service on any defendant, Ms. Rice filed a motion for nonsuit in the Circuit Court of Fairfax County. (Def. Alpha Security Mem. Supp. Mot. Dismiss ["Def. Alpha Security's Mem."] Ex. 2, Doc. 4–1.)

- On August 14, 2012, the Circuit Court entered an order granting Ms. Rice a nonsuit concerning all claims against all Defendants. (Def. Alpha Security's Mem. Ex. 3 (Order, *Rice v. Alpha Security, Inc.*, No. 2011–11858 (Va.Cir.Ct. Aug. 14, 2012), Doc. 4–1).)

- On August 30, 2012, Ms. Rice, through counsel, requested the Circuit Court vacate the nonsuit. (Def. Alpha Security's Mem. Ex. 2, Doc. 4–1.) That same day, the Circuit Court entered an order vacating the nonsuit. (Def. Alpha Security's Mem. Ex. 4 (Order, *Rice v. Alpha Security, Inc.*, No.2011–11858 (Va. Cir.Ct. Aug. 30, 2012)).) Ms. Rice then attempted to serve Defendants' registered agents but they were not in their offices and their assistants indicated that Defendants did not authorize them to accept service in their absence. (Pl.'s Opp'n at 4.)

- On August 31, 2012, when the agents returned to their offices, Ms. Rice perfected service on Defendants. (*Id.*)

After receiving Plaintiff completed service on August 31, 2012, the following actions occurred:

- On September 13, 2012, the day before the Circuit Court would hear Plaintiff's motion to amend her complaint, Defendants removed this action to this Court. (*See* Doc. 1.)

- On September 18, 2012, Alpha Security filed a Motion to Dismiss Plaintiff's Complaint with prejudice for insufficient service and lack of personal jurisdiction. (Doc. 4.)

- On September 20, 2012, Plaintiff filed an Amended Complaint providing more detailed allegations of her claims. (Doc. 5.)

- On September 21, 2012, Alpha Security filed a Motion to Dismiss Plaintiff's Amended Complaint, incorporating by reference all the arguments and exhibits in its Motion to Dismiss the original Complaint. (Doc. 6.)

- On October 3, 2012, the Comfort Inn Defendants filed a Motion to Dismiss Ms. Rice's Amended Complaint. (Doc. 9.)

The Court now considers Defendants' Motions to Dismiss Plaintiff's Amended Complaint. The Court heard oral arguments on Defendants' Motions on October 26, 2012. On October 29, 2012, the Court issued a Short Order denying the Motions for reasons to be stated. (Doc. 21.) On December 20, 2012, the Court issued an Order staying the October 26 Order, staying discovery, and requiring the parties to re-argue the Motions on January 11, 2012. (Doc. 29.) Having considered the matter a second time, the Court now rules on Defendants' Motions.

## II. DISCUSSION

### A. Standard of Review

#### 1. *Sufficiency of Service*

Federal Rule of Civil Procedure 12(b)(5) permits dismissal for insufficient

service of process. Fed.R.Civ.P. 12(b)(5) (2013). Where a defendant raises a Rule 12(b)(5) challenge to sufficiency of service, the plaintiff bears the burden to establish that service of process conformed with Federal Rule of Civil Procedure 4. *See, e.g., Elkins v. Broome,* 213 F.R.D. 273, 275 (M.D.N.C.2003). "In determining whether the plaintiff has satisfied his burden, the technical requirements of service should be construed liberally as long as the defendant had actual notice of the pending suit." *Id.* (citing *Karlsson v. Rabinowitz,* 318 F.2d 666, 668–69 (4th Cir.1963)). "When there is actual notice, every technical violation of the rule or failure of strict compliance may not invalidate the service of process. But the rules are there to be followed, and plain requirements for the means of effecting service of process may not be ignored." *Armco, Inc. v. Penrod–Stauffer Bldg. Sys., Inc.,* 733 F.2d 1087, 1089 (4th Cir.1984).

### 2. Personal Jurisdiction

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a court may dismiss a case for lack of personal jurisdiction. Fed. R.Civ.P. 12(b)(2). The plaintiff bears the burden of establishing that personal jurisdiction exists by a preponderance of evidence. *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir.1989). The interplay between service and personal jurisdiction is such that, "[a]bsent waiver or consent, a failure to obtain proper service on the defendant deprives the court of personal jurisdiction over the defendant." *Koehler v. Dodwell,* 152 F.3d 304, 306 (4th Cir.1998).

### B. Analysis

The Court grants Defendants' Motions to Dismiss for three reasons. First, Plaintiff's nonsuit and the subsequent vacation thereof did not provide additional time to serve Defendants beyond the one-year period after filing the Complaint, provided by Virginia Code Section 8.01–275.1. Second, removal to this Court does not provide additional time to cure service where the fatal defect in service, rendering this case procedurally dead in state court, occurred prior to removal. Third, Plaintiffs federal rights are not burdened by state procedural law, as state law actually provided Plaintiff more time to serve Defendants than she would have had under the Federal Rules.

As a threshold matter, the Court recognizes that service under Virginia civil procedure is necessary before any evaluation of how removal to this Court affects any analysis of defective service and opportunities for Plaintiff to cure any defect. Where a defendant challenges the sufficiency of service occurring prior to removal, courts apply state procedural rules in evaluating sufficiency because federal procedure governs cases only after the date of removal. Fed.R.Civ.P. 81(c); *Morton v. Meagher,* 171 F.Supp.2d 611, 613–14 (E.D.Va.2001) (citations omitted); *Londeree v. Crutchfield Corp.,* 68 F.Supp.2d 718, 722 & n. 4 (W.D.Va.1999) (citation omitted). Thus, Plaintiff's bold assertion that "Virginia's civil procedure rules do not apply in this Court" is simply not true to the extent that state law governs any assessment of pre-removal conduct. State law is not to be disregarded with respect to conduct occurring while the matter was pending in state court. *See Morton,* 171 F.Supp.2d at 613–14 (citations omitted). Therefore, the Court will analyze sufficiency of service under Virginia law in order to determine whether it is even necessary to address the issues any effect that removal to federal court may have on granting additional time for service.

### 1. Service Is Untimely Under Virginia Law

The Court holds that Plaintiffs service of process was untimely because service oc-

curred more than one year after Plaintiff filed the Complaint and Plaintiff did not exercise due diligence to mitigate the insufficient service.

■ Under Virginia law, service of process is timely when a plaintiff serves process on the defendant within twelve months of commencing the action. Va. Code § 8.01–275.1 (2007 & 2012 Supp.). Where a plaintiff fails to serve the defendant within one year, service is timely only where the court finds that "the plaintiff exercised due diligence to have timely service on the defendant." *Id.* The Virginia Supreme Court defines due diligence as a "devoted and painstaking effort" to effect service. *Dennis v. Jones*, 240 Va. 12, 393 S.E.2d 390, 393–94 (1990); *see also Londeree*, 68 F.Supp.2d at 723 (relying on *Dennis's* definition when determining timeliness of service); *Liberty Mut. v. Int'l Indus.*, 780 F.Supp. 359, 363 (E.D.Va.1991) (citing *Dennis* for the definition of due diligence when analyzing a statute of limitations).

Where a court determines that service occurred more than one year after commencement and no due diligence exists, "the court *shall* dismiss the action with prejudice." Va.Code Ann. § 8.01–277 (emphasis added). Accordingly, no court may enter judgment against a defendant who was served with process after the one-year filing period unless the court finds as a fact that the plaintiff exercised due diligence to have effected timely service on that defendant. Va. Sup.Ct. R. 3:5(e).[1] Courts in the Commonwealth of Virginia apply calendar years—not "365–day periods"—when computing whether a statute of limitations has expired. *Ward v. Ins. Co. of N. Am.*, 253 Va. 232, 482 S.E.2d 795,

797 (1997). Thus, dismissal is mandatory absent either (1) service within one year to the date of filing a complaint or (2) plaintiff's exercise of due diligence in attempting to timely effect such service. A dismissal for failure to comply with the one-year service requirement is a dismissal with prejudice. *Gilbreath v. Brewster*, 250 Va. 436, 463 S.E.2d 836, 838 (1995).

On May 17, 2011, the EEOC issued Ms. Rice a Notice of Right to Sue. (Def. Alpha Security's Mem. Ex. 1 (EEOC Notice of Right to Sue).) The Notice explained that, pursuant to federal law, Ms. Rice needed to file her discrimination claims against Defendants within ninety (90) days from the date of her receipt of the Notice. (*Id.*) Plaintiff timely filed her Complaint with the Circuit Court of Fairfax County on August 15, 2011. (*See* Compl., Doc. 1–4.) Applying the "calendar year" rule established in *Ward*, service of process on Defendants would be timely, as a general matter, on or before August 15, 2012. Where service does not occur within one year, only a court determination that Plaintiff exercised due diligence could permit her service to satisfy Virginia civil procedure. *See* Va.Code Ann. § 8.01–277.

Defendants argue that Plaintiffs service of process was deficient because Plaintiff did not serve them with a copy of the Complaint until August 31, 2012, and that, assuming the nonsuit order tolled her one-year limitation, "a one time effort on the last day hardly constitutes due diligence, as persons may reasonably be expected to be unavailable on any given day." (Def. Alpha Security's Reply at 5, Doc. 15.) Plaintiff argues that her service on Defendants was proper due to the effect of her taking a nonsuit before the calendar year

---

**1.** This rule is substantially the same as the former Virginia Supreme Court Rule 3:3(c) cited in a number of decisions, such as *Dennis* and *Londeree*, discussing timely service. *See,*

*e.g., Janvier v. Arminio*, 272 Va. 353, 634 S.E.2d 754, 756 n. 1 (2006) ("The provisions of former Rule 3:3(c) are nearly identical to the provisions of Rule 3:5(e).").

expired. (Pl.'s Opp'n at 4.) Plaintiff obtained a nonsuit, for seventeen days, from August 14, 2012, one day before the final date for timely service, until August 30, 2012. (*Id.; see also* Def. Alpha Security's Mem. Ex. 4 (state court order vacating nonsuit).) The Circuit Court vacated Plaintiff's nonsuit on August 30, 2012, and the clerk of the Circuit Court issued a summons for service on the Defendants. (Def. Alpha Security's Mem. Exs. 4, 5.) Plaintiff attempted to serve process on Defendants on the same day but "[h]er representative was not able to serve Defendants' Registered Agents on August 30, 2012, because they were not in their offices and their assistants indicated that no one was authorized to accept service in their absence." (Pl.'s Opp'n at 4.) Plaintiff completed service when the agents returned to their offices on August 31, 2012. (*Id.*)

Considering the timing and procedural mechanisms at issue, the Court reaches its conclusion after determining (1) the effect of Plaintiff's nonsuit in ascertaining the calendar-year deadline for service and (2) due diligence, if service did not occur within the appropriate one-year period.

*a. Effect of Nonsuit*

■ The Court finds that Plaintiff's nonsuit did not extend the time for proper service or otherwise mitigate her untimely service because an order to vacate a nonsuit renders the nonsuit void and thus service time is computed as if the original nonsuit order never occurred.

In Virginia, a nonsuit is a procedural mechanism available to a plaintiff, the effect of which is a voluntary dismissal without prejudice. Va.Code Ann. § 8.01–380. As such, this Court has held that the effect

of a nonsuit is to put an end to the pending litigation without prejudice to either party. *Alderman v. Chrysler Corp.,* 480 F.Supp. 600, 603 (E.D.Va.1979); *see also Delaney v. Marsh,* No. 7:08–CV–465, 2010 WL 1212569, at *5 (W.D.Va. Mar. 25, 2010) (citing *Alderman* ). A party may take a nonsuit at any time before (1) "a motion to strike the evidence has been sustained," (2) "the jury retires from the bar," or (3) "the action has been submitted to the court for decision." Va.Code Ann. § 8.01–380(A). A party may only take one nonsuit as a matter of right with respect to any given proceeding. Va.Code Ann. § 8.01–380(B).

With respect to the effect of a dismissal on the time for service, where the action is dismissed without determining the merits, "the time such action is pending shall not be computed as part of the period within which such action may be brought, and another action may be brought within the remaining period." Va.Code Ann. § 8.01–299(E)(1). The Virginia Code provides for further rules where a nonsuit occurs, stating in pertinent part that:

> If a plaintiff suffers a voluntary nonsuit as prescribed in § 8.01–380, the statute of limitations with respect to such action shall be tolled by the commencement of the nonsuited action, and the plaintiff may *recommence* his action within six months from the date of the order entered by the court, or within the original period of limitation . . . whichever period is longer.

Va.Code Ann. § 8.01–299(E)(3) (emphasis added).[2]

Plaintiff argues that this Court should not count against her the seventeen days

**2.** The statute also indicates that this provision applies regardless of the origin of the original suit—federal or state—and the recommencement in any other court. Va.Code Ann.

§ 8.01–299(E)(3). Further, the provisions apply equally to common law and statutory actions. *Id.*

during which this case was nonsuited—the period from August 14 to August 20, 2012. (Pl.'s Opp'n at 4.) Defendants argue that Plaintiff should have filed a new action rather than having the Circuit Court vacate the nonsuit order. (Comfort Inn Defs.' Mem. Supp. Mot. Dismiss at 5, Doc. 9.) Defendants further argue that the vacation of the nonsuit order effectively returned the action to the "status *quo ante*" because an order to vacate a prior order renders the prior order void. (*Id.*)

Ordinarily, the effect of a nonsuit would be to put an end to this litigation without prejudice to Ms. Rice or Defendants. Thus, the Court would not count the seventeen days of the nonsuit in this litigation, August 14 to August 30, 2012, against Ms. Rice were she to resume the litigation at a later point. *See Alderman*, 480 F.Supp. at 603. Resumption, of course, assumes the recommencement of the action pursuant to the Virginia nonsuit statute. What complicates the matter here is that Plaintiff vacated the nonsuit instead of filing a new action.

The Court agrees with Defendants' position and reasons regarding the effect of the August 30, 2012 Order and finds that when the Circuit Court entered the order vacating the nonsuit, the effect of the order was to render the nonsuit as if it had never occurred, thus the clock for the time for service continued to run from the date of filing. The Circuit Court order "vacated" the non-suit order. The use of the term "vacate" means voiding, nullifying, and canceling an order. The Virginia Court of Appeals in *Ferguson v. Commonwealth*, 51 Va.App. 427, 658 S.E.2d 692 (2008), explained that the effect of vacating an order or judgment is to "nullify or cancel; make void; invalidate." *Id.* at 695 (citing Black's Law Dictionary 1584 (8th ed. 2004)). The First Circuit reached a similar conclusion in *NLRB v. Goodless Bros. Elec. Co.*, 285 F.3d 102 (1st Cir. 2002), where it found that vacate means "to render inoperative; deprive of validity; void; annul" and that an order to vacate "wipes the slate clean." *Id.* at 110 (citing Random House Webster's Unabridged Dictionary 2100 (2d ed. 1997)). The Court must interpret the order and give the word "vacate" the common meaning of the term.

Consideration of Virginia civil procedure further supports the conclusion that Plaintiff's course of action did not invoke the tolling benefits of § 8.01–299(E)(3). The Rules of the Supreme Court of Virginia define commencement of an action as the filing of a complaint with the clerk's office. Va. Sup.Ct. Rule 3:2(a); *Culkin v. CNH Am., LLC*, 598 F.Supp.2d 758, 760 (E.D.Va.2009). Thus, Plaintiff commenced her action against Defendants in August 2011 when she filed her original Complaint in the Circuit Court. Accordingly, Plaintiff would benefit from the six-month extension provided by the nonsuit statute had she recommenced the action by filing another complaint with the clerk's office in the Circuit Court. When Plaintiff vacated the nonsuit instead of filing a new Complaint, Plaintiff did not recommence the action. Thus, she could not avail herself of the six-month tolling benefit of the nonsuit. Vacating the nonsuit effectively voided the nonsuit and reinstated the previous deadline of August 15, 2012 for service to be effective.

Plaintiff's citation of *Collins v. Shepherd*, 274 Va. 390, 649 S.E.2d 672 (2007), does not remedy her deficiencies. In that case, the Circuit Court of the City of Norfolk dismissed a case for defective service pursuant to a local rule that permitted courts to dismiss cases *sua sponte* where service had not been effected within one year of filing the complaint. *Id.* at 676. The Virginia Supreme Court invalidated the local rule permitting such a *sua sponte* dismiss-

al because that rule conflicted with plaintiff's substantive right to take a nonsuit even after the one-year period passed. *Id.* at 677–78. That situation is not analogous to the one before the Court because (1) no analogous rules are in operation here and (2) dismissal here does not interfere with Plaintiff's right to take a nonsuit. The Court's decision finds no basis in any local rule that runs afoul of Virginia's nonsuit statute, and dismissal certainly is not *sua sponte*, as Defendants filed the instant Motions. Nor does dismissal abridge a right to take a nonsuit, as state law only entitles a party to one nonsuit as a matter of right and .Plaintiff already took her nonsuit. Additionally, *Collins* recognized that the plaintiff's substantive right in issue was to "take a nonsuit *and refile his civil action.*" *Id.* at 676 (emphasis added). As indicated above, Plaintiff did not refile her action; she vacated the nonsuit in lieu of filing a new complaint with the clerk's office and paying a filing fee.

Equally unavailing is Plaintiff's argument concerning "computation of time" as discussed in *Frey v. Jefferson Homebuilders, Inc.*, 251 Va. 375, 467 S.E.2d 788 (1996). (Pl.'s Opp'n at 4.) In *Frey*, the Virginia Supreme Court found service proper where the last day of the one-calendar-year period for service, as mandated by § 8.01–275.1, was a Friday designated as a legal holiday.[3] *Id.* at 789–90. Thus, the plaintiff could not obtain summons because the clerk's office was closed. *Id.* at 789. The plaintiffs obtained summons from the clerk's office on the following Monday, when the office reopened, and completed service on the defendants the same day. *Id.* at 789. In finding service timely despite its occurrence after one year from the date the complaint was filed, the Virginia Supreme Court relied upon a statutory exception providing for an extension of service where last day for service, as set by statute or the Rule of the Supreme Court of Virginia, falls on a weekend or a legal holiday. *See id.* at 790 (citing Va.Code Ann. § 1–13.3:1); Va.Code Ann. § 1–210 (2010) (current statute capturing language of § 1–13.3:1). The court considered it an "absurd construction[ ]" to read § 8.01–275.1 as nullifying service that occurs beyond one year when the same service is validated by § 1–13.3:1's exception regarding legal holidays and weekends.[4] Thus, in making such reference to *Frey*, Plaintiff here seeks an extension because she could not obtain summons during the seventeen days the nonsuit was in effect.

However, *Frey's* exception finds no application here because the statutory exception providing for the *Frey* extension unequivocally states its application to situations where the last day for service falls on a weekend or a legal holiday. August 15, 2012 was a Wednesday and, even if the Court agreed with Plaintiff as to the effect of the nonsuit freezing her time for service during those seventeen days, August 30, 2012 was a Thursday. Accordingly, neither "last day" falls on a legal holiday or weekend to trigger additional time for service. The Court finds that this conclusion is not an "absurdity of validating a delayed service yet nullifying such ser-

---

**3.** The Court notes that *Frey* calculated the one-year service period using days rather than calendar years. *Frey,* 467 S.E.2d at 790. However, *Frey* did not hold that days are to be used rather than years, and thus, as previously noted, Virginia courts apply calendar years rather than counting days. *See Ward,* 482 S.E.2d at 796–97 (explaining the state-

ments in *Frey* and holding that statutes of limitations are calculated using calendar years).

**4.** The language of the statute cited in *Frey* has been substantively captured in § 1–210 of the Virginia Code.

vice," *Frey,* 467 S.E.2d at 790, because no statute validates Plaintiff's service on August 31, 2012. Unlike *Frey,* Plaintiff finds no statutory or judicially-crafted protection for service effected more than one year after filing a complaint where a nonsuit order was vacated rather than recommenced in accordance with Virginia law. As such, *Frey* offers no assistance to Plaintiff's service with respect to calculation of the one-year period for service.

▮ Finally, a dismissal for failure to comply with the one-year service requirement is a dismissal with prejudice. *Collins,* 649 S.E.2d at 679 (citing *Gilbreath,* 463 S.E.2d at 838). As a result, Plaintiff's failure to serve Defendants within one year of filing her Complaint requires this Court to dismiss her Complaint with prejudice pursuant to Virginia civil procedure unless the Court finds Plaintiff exercised due diligence in her attempt to serve Defendants.

### b. Due Diligence

▮ The Court finds that Plaintiff failed to exercise due diligence in serving Defendants because she made no effort to serve Defendants until after vacating her nonsuit, on what she erroneously perceived to be the last available day for service under Virginia law. Aside from her statement that Defendants' registered agents were not available on August 30, Plaintiff fails to indicate any difficulties she encountered in serving process on the Defendants within the one-calendar-year period. Plaintiff lacks any evidence of a "devoted and painstaking effort" to effect service. *See Dennis,* 393 S.E.2d at 393–94.

The Court also rejects Plaintiff's reliance on *Frey* concerning any due diligence she may have demonstrated. (Pl.'s Opp'n at 4.) As noted above, the *Frey* decision provided additional time for service because the final day, as set by law, fell on a legal holiday where summons from the clerk was unobtainable. *Id.* at 790. Thus, Plaintiff seeks an extension because she could not obtain summons during the time these claims were subject to a nonsuit. She further argues that on August 30, 2012, the unavailability of Defendants' agents to receive process, and she completed service the following day. This, she argues, constitutes due diligence because she served Defendants one day after obtaining a summons.

The primary reason Plaintiff's argument fails is that, as explained above, the Circuit Court's order vacating the nonsuit returned the initial deadline for service to August 15, 2012. Thus, Plaintiff's service was not merely one day late. Notwithstanding the effect of the vacate order, the facts before the Court do not demonstrate that, like in *Frey,* Plaintiff could not obtain a summons from the clerk's office. This basic fact alone distinguishes this case from *Frey.* To be sure, Plaintiffs obtained a summons from the clerk and first attempted service on August 30, 2012. That date, a Thursday, was not a holiday where the courts were closed. Rather, Plaintiff's asserted difficulty was in serving the Defendants because the Defendants' agents were unavailable on the day they sought and actually received a summons. The Court does not read *Frey* to grant additional time where a defendant or its agent is unavailable for any reason, but rather only an exceptional circumstance such as a holiday where summons is unobtainable. Furthermore, the fact that she served Defendants one day after obtaining summons does not somehow negate the fact that at no point prior to August 30, 2012—more than one calendar year after filing her Complaint in state court—did she attempt service. Accordingly, the Court again finds *Frey* inapplicable, this time with respect to due diligence.

Because Plaintiff did not timely serve Defendants with process under Virginia law and Plaintiff did not demonstrate a devoted and painstaking effort to effect service on Defendants, a plain reading of the statutory deadlines reveals that service is untimely and the Court lacks personal jurisdiction over Defendants. Accordingly, under Virginia procedure, the Court must dismiss Plaintiffs Amended Complaint with prejudice because she did not (1) serve Defendants by August 15, 2012, (2) recommence the action so that she might take advantage of the additional time for service provided by the nonsuit statute, or (3) exercise due diligence in serving Defendants. Ultimate disposition of this matter, however, requires the Court to further examine the effect of removal of the case to federal court.

### 2. *Removal Does Not Provide Plaintiff Additional Time to Serve Process*

■■■ The Court finds that removal does not provide Plaintiff with extra time to perfect service where a fatal defect in completed service, requiring dismissal under Virginia law, occurs prior to removal. Title 28 of the United States Code, in setting forth procedures governing cases removed to federal court, provides, in pertinent part:

> In all cases removed from any State court of the United States in which ... service of process has not been perfected prior to removal, or in which process served proves to be defective, such process may be completed or new process issued in the same manner as in cases originally filed in such district court.

28 U.S.C. § 1448 (2012). The statute does not specifically address situations where service was deficient upon the expiration of a state-mandated time limit. *Lawrence v. Hanson*, 197 F.Supp.2d 533, 538 (W.D.Va.2002). Thus, the Court must ascertain the effect of § 1448 where (1) Plaintiff completed service prior to removal, (2) the completed service was defective, and (3) the defect existing at the time of removal mandated dismissal under Virginia law. This situation significantly differs from the more likely scenario of removal that occurs prior to the expiration of the period in which a plaintiff may effect service.

Neither the Supreme Court nor the Fourth Circuit have established controlling precedent explaining the effect of § 1448 in a case where deficient service would have resulted in dismissal in a state court. The Court acknowledges that *Brazell v. Green*, 67 F.3d 293 (4th Cir.1995) (unpublished table opinion), permitted the plaintiff additional time for service in accordance with § 1448. The Court posits that *Brazell's* scant analysis and nonbinding effect paved the way to a split among district courts within this circuit, as discussed below, as to § 1448's effect on facts similar to the ones before the Court. This split suggests that cases subsequent to *Brazell* continue to view this issue as unresolved and thus engage in the process of either deciding the issue or assuming, without deciding, the applicability of § 1448 to situations where service was defective prior to removal. Furthermore, as this Court previously noted in *Morton*, the facts in *Brazell* "squarely fall within the ambit of § 1448" and the opinion does not mention untimely service. 171 F.Supp.2d at 616. Therefore, the Court does not perceive *Brazell* as instructive on the facts before the Court.

The split among the district courts within this circuit on this issue includes opposing positions among the district courts here in Virginia. This Court has held that § 1448 does not retroactively extend the time limits prescribed by state law in cases where service was untimely before the ac-

tion was removed to federal court. *Morton,* 171 F.Supp.2d at 615; *Russell v. Gennari,* No. 1:07–CV–793, 2007 WL 3389998, at *5 (E.D.Va. Nov. 8, 2007), *aff'd,* 284 Fed.Appx. 98 (4th Cir.2008) (relying on *Morton* to find that a procedural flaw prior to removal is governed by state law). Conversely, the Western District of Virginia has applied § 1448 to provide additional time to perfect defective service after removal. *See Dietz v. McAdams–Norman Property, II, LLC,* No. 7:12–CV–509, 2013 WL 247651, at *1 (W.D.Va. Jan. 23, 2013); *Lawrence,* 197 F.Supp.2d at 539.

In *Morton,* the issue was whether § 1448 could retroactively extend the time limits, prescribed by state law, for serving process on a defendant where service was untimely prior to removal of the action to federal court. The plaintiff, an automobile accident victim, sued the driver of the second vehicle for damages and served the Commissioner of the Division of Motor Vehicles to obtain personal jurisdiction over the out-of-state defendants. *Id.* at 613. Prior to removal, the defendant sought dismissal for incomplete service, arguing that the Commissioner served process on the defendants four days after the final date of the prescribed period. *Id.* The Court found that service was undeniably late and that the plaintiff was not diligent in informing the Commissioner of the proximity of the deadline, especially since the plaintiff served the Commissioner two business days before the deadline. *Id.* at 614–15. Further, *Morton* observed that under Rule 3:3(c), now Virginia Supreme Court Rule 3:5(e),[5] a plaintiff must make service in a timely manner unless "the court finds as a fact that the plaintiff exercised due diligence to have timely service on [a defendant]." *Id.* at 617. The *Morton* ruling ultimately relied upon a

conclusive determination that a "Virginia State court would have dismissed the case had it not been removed," therefore the case was "dead" prior to removal. *Id.* at 615. In keeping with doctrines of comity and federalism, this Court opined, the case could not be "revived upon removal by a federal court." *Id.; cf. Oiler v. Biomet Orthopedics,* No. 02–3778, 2003 WL 22228574, at *1–3 (E.D.La. Sept. 25, 2003) (dismissing the plaintiff's complaint where the plaintiff untimely served the defendant after the expiration of the state's mandated service period because "all relevant conduct with respect to plaintiff's untimely service of the petition occurred prior to removal").

The Court rejects Plaintiff's attempt to distinguish *Morton* from the case at hand. Plaintiff observes that *Morton* is factually different because it did not consider the effect of other state procedures such as a nonsuit. (Pl.'s Opp'n at 8 n. 2.) However, as noted above, the nonsuit statute does not benefit a plaintiff who fails to recommence an action after taking a voluntary nonsuit. Thus, the Court finds inapplicable *Lawrence's* position that *Morton's* failure to consider all state procedures and remedies undermined the doctrine of comity by "depriv[ing] the plaintiff of one of its primary privileges under state law." *Lawrence,* 197 F.Supp.2d at 539. Dismissal here for defective service does not affect Plaintiff's right to take a voluntary nonsuit, a right she exercised before even once attempting service. Furthermore, Plaintiff is not entirely correct in her assertion that the nonsuit statute means that "in Virginia, cases are still very much alive even if a Plaintiff did not serve a year within filing." (Pl.'s Opp'n at 8 n. 2.) To the contrary, where a plaintiff fails to serve within one year and a nonsuit has

---

**5.** *See, e.g., Janvier,* 634 S.E.2d at 756 n. 1 ("The provisions of former Rule 3:3(c) are nearly identical to the provisions of Rule 3:5(e).").

already been taken, a case is only "alive" upon a showing of due diligence in effecting service, as the nonsuit mechanism is not available to extend the life of a case where service is not effected within the time period set by Virginia law. Thus, Plaintiff's attempt to distinguish *Morton* fails.

Other cases within this circuit fall in line with *Morton's* application of a dismissal pursuant to state law where process was deficient prior to removal. Taking the same position with respect to cases "jurisprudentially dead" before removal, the Western District of North Carolina also dismissed a case where a plaintiff failed to timely issue a summons within five days of filing a complaint, as mandated by state law, prior to removal. *Phoenix Colvard Dev. v. Sheldon Good & Co. Int'l*, No. 5:08–CV–72, 2009 WL 159412, at *4 (W.D.N.C. Jan. 21, 2009); *see also Maxwell v. Nat'l Gypsum Co.*, No. 3:03–CV–66, 2003 WL 21026756, at *1 (W.D.N.C. Apr. 2, 2003) (dismissing a complaint where plaintiff failed to timely serve summons because "Section 1448 does not provide for any additional time in which to perfect service"). In a context not implicating service of process, this Court reiterated in *Russell v. Gennari* that dismissal is appropriate where the procedural flaw under state law—a *pro se* complaint signed by a non-attorney parent—arose prior to removal and state law required mandatory dismissal where such a flaw existed. *Russell*, 2007 WL 3389998, at *5.

Another district court decision underscores the critical facts in Court's determination that Plaintiffs case was indeed "dead" upon removal. *Patterson v. Brown*, No. 3:06–CV–476, 2008 WL 219965, at *6 (W.D.N.C. Jan. 24, 2008), *rev'd in part sub nom. Patterson v. Whit-*

*lock*, 392 Fed.Appx. 185 (4th Cir.2010).[6] In *Patterson*, North Carolina law required the plaintiff to serve summonses on the defendants within ninety days of the original issue of summons. *Id.* at *5. After acknowledging *Morton's* holding, the district court held that § 1448 provided the plaintiff additional time to perfect service within 120 days of removal. 2008 WL 219965, at *5–6. However, rather than find § 1448 applied solely due to the fact of removal, the court examined whether the plaintiff's case was, in fact, " 'dead' upon removal." *Id.* at *5. The court held that § 1448 applied only "[b]ecause the Plaintiff still had the opportunity to revive the Summonses by seeking a reissuance prior to the expiration of the 90–day period." *Id.* Accordingly, the court found that the "[p]laintiff's action would not be subject to dismissal" in state court at the time of removal. *Id.* In much the same manner here, Plaintiff's case would have been subject to dismissal at the time of removal because service was completed, at the time of completion; service was untimely in that it occurred after the one-year service period mandated by state law; and she had already exercised her right to a nonsuit.

Conversely, some of the Court's sister districts have adopted the rule that a "defendant who makes the decision to remove the case to federal court restarts the clock." *Randolph v. Hendry*, 50 F.Supp.2d 572, 580 (S.D.W.Va.1999); *Lawrence*, 197 F.Supp.2d at 539 (quoting *Randolph*). Accordingly, these decisions held that a plaintiff may make use of an additional 120 days after removal, the time period set forth by Rule 4(m), to serve a defendant where service either did not occur or was defective. *Id.; see also Dietz*, 2013 WL 247651, at *3–4; *Carden v. Wal-*

---

**6.** The question of § 1448's application after removal or the district court's determination

thereof was not before the Fourth Circuit on appeal.

*Mart Stores,* 574 F.Supp.2d 582, 587–88 (S.D.W.Va.2008); *Bonds v. Electrolux Home Prods.,* No. 8:06–1650, 2006 WL 3955825, at *2 (D.S.C. Dec. 6, 2006); *Lawrence,* 197 F.Supp.2d at 539; *cf. Eccles v. Nat'l Semiconductor Corp.,* 10 F.Supp.2d 514, 519 (D.Md.1998) (examining whether a plaintiff's claims that did not comply with state law would be timely under federal law). In *Randolph,* the Southern District of West Virginia held that Rule 4(m)'s 120–day period for service ran from the date of removal, thus providing the plaintiff more time than she would have had under the state service rule. 50 F.Supp.2d at 579–80. The *Randolph* court reasoned that "placement of the burden on [the] defendant's shoulders is proper, however, because it is that defendant who makes the decision to remove the case to federal court and restarts the clock." 50 F.Supp.2d at 580. As a result, *Lawrence* extolled the position that applying federal procedural law after removal is a more efficient and impartial approach to resolving these types of situations. *Lawrence,* 197 F.Supp.2d at 539.

An examination of these cases, however, proves them distinguishable from Plaintiff's situation and, thus, unpersuasive. In *Randolph,* removal occurred prior to the expiration of the service period mandated by state law, which was 120 days. 50 F.Supp.2d at 579. It was primarily for this reason that the *Randolph* court denied the defendant's motion, finding it premature. *Id.* at 580. In contrast, Defendants' motions to dismiss are not premature here, as the time period set forth by state law expired prior to their motions. The Court emphasizes that the question here involves a situation where service was completed and fatally defective at the time of removal. The plaintiff in *Randolph,* were removal to not have occurred, still would have had time to properly serve in accordance with state law. Conversely, there is nothing more Plaintiff could have done in this case, had removal not occurred, to cure her defect.[7] *Cf. Patterson,* 2008 WL 219965, at *5 (finding plaintiffs case was not "dead" on removal where removal occurred two days before the expiration of the service period). Thus, *Randolph's* factual differences and ultimate disposition of the motion to dismiss as premature distinguish that case from the one before the Court.

The Court also finds *Lawrence* unpersuasive in its adoption of *Randolph's* holding. *Lawrence* found *Morton's* approach inconsistent, explaining that although *Morton* based its holding on the assumption that a state court would have dismissed the claims, *Morton* failed to consider a plaintiff's right to a nonsuit prior to a motion for judgment. *Lawrence,* 197 F.Supp.2d at 539. However, such a concern would not apply here because Plaintiff already exercised her statutory right to one nonsuit. Thus, similar to the differences in the *Collins* holding, dismissal here on the basis of defective service under state law does not hastily deprive Plaintiff of any rights she could have obtained in state court. The fact that *Lawrence* finds the *Randolph* rule to be "more easily implemented" than *Morton's* rule does not negate comity concerns underlying *Morton's* holding. Furthermore, the Court finds disconcerting the idea that a plaintiff

---

**7.** Similarly, the *Morton* decision rejected the plaintiff's offering of a District of New Jersey case presenting a similar scenario, where the time period for service in the New Jersey case had not expired prior to removal. *See Wright v. Xerox Corp.,* 882 F.Supp. 399 (D.N.J.1995).

The *Morton* opinion explained that this fact rendered the New Jersey case inapplicable to Morton's situation due to the fact that Morton's time for service had expired. 171 F.Supp.2d at 616.

should benefit from a right to remove this action, when she already had a full calendar year in which to effect proper service and failed to do so. *Cf. Morton,* 171 F.Supp.2d at 617 ("The rule which Morton argues would make the federal courts complicit in allowing the plaintiff to benefit from a lack of diligence. Where, as here, an action is legally dead before it is removed, § 1448 cannot be used to resurrect it.").

Departures by other sister courts from the position espoused in *Morton* are equally unpersuasive. *Dietz* read Rule 15(c), governing amendment of pleadings, in conjunction with § 1448 to allow a plaintiff to correct a technical deficiency in summons served one week before the expiration of the one-year service period. *Dietz,* 2013 WL 247651, at *3–4. The facts before this Court involve failure to serve, rather than the prudence of allowing someone to amend a timely served summons to correct a typographical error in a party's name.[8]

In *Bonds,* the District of South Carolina overruled a magistrate judge's decision to follow *Morton* and, in the process, explained that it was "not clear that [Bonds's] case was procedurally dead in state court." *Bonds,* 2006 WL 3955825, at *1–2. In contrast, the Court here finds no "guesswork involved with determining whether the case was procedurally dead," a concern the *Bonds* court expressed, as Plaintiff did not timely serve Defendants or exercise due diligence in attempting to do so.

The court in *Eccles* found dismissal warranted under either state or federal law, and thus assumed, without deciding, that federal law could provide additional time for service where service was untimely under state law. 10 F.Supp.2d at 520. The Court notes that this decision arose prior to both *Morton* and *Randolph,* the leading cases on the conflicting argument before the Court. The Court respectfully differs with the District of Maryland and finds no such assumption warranted in light of other persuasive authority that has developed since *Eccles.*

The *Carden* decision is distinguishable in the fact that the court there does not discuss whether the failure to perfect service prior to removal would have resulted in dismissal. Rather, the court, explicitly noting that it was not addressing a Rule 12(b)(5) challenge, only analyzed the § 1448 issue to the extent it affected a motion to dismiss for fraudulent joinder. *Carden,* 574 F.Supp.2d at 587 & n. 3. Because Plaintiff's failure to serve would have mandated dismissal here even prior to removal, it is unclear that *Carden* addressed a scenario involving a case procedurally dead at removal.

The Court's decision—to not permit additional time for service where a defect in service completed prior to removal mandates dismissal under state law—is further supported by a number of circuits that agree that § 1448 cannot revive a legally and procedurally dead case. *See Wallace v. Microsoft Corp.,* 596 F.3d 703, 707 n. 2 (10th Cir.2010); *Romo v. Gulf Stream Coach, Inc.,* 250 F.3d 1119, 1122 (7th Cir. 2001); *Marshall v. Warwick,* 155 F.3d 1027, 1033 (8th Cir.1998); *Osborne v. Sandoz Nutrition Corp.,* 67 F.3d 289 (1st Cir. 1995) (unpublished table opinion); *Witherow v. Firestone Tire & Rubber Co.,* 530 F.2d 160, 168 (3d Cir.1976), *superseded by*

---

8. Had such a scenario occurred here, this fact could potentially have supported a showing of due diligence with respect to timely service under state law and thus may have made a § 1448 analysis unnecessary. Of course, these facts are not before the Court and it thus takes no position on such a determination, yet such factual differences further distinguish *Dietz.*

*statute,* Judicial Improvements Act of 1985, Pub. L. No. 99–336, 100 Stat. 633, *as recognized in Bradshaw v. Gen. Motors Corp., Fisher Body Div.,* 805 F.2d 110, 112 & n. 2 (3d Cir.1986); *cf. Lee v. City of Beaumont,* 12 F.3d 933, 937 (9th Cir.1993), *overruled on other grounds by Ca. Dep't of Water Res. v. Powerex Corp.,* 533 F.3d 1087 (9th Cir.2008) (explaining that "Rule 4(j) does not apply to service of process which was attempted *prior* to removal"). This wave of authority supporting the position espoused in *Morton* indicates that *Randolph* and its progeny apply the minority rule on this issue. *Cf. Hertel v. Mortg. Elec. Registration Sys.,* No. 1:12–CV–174, 2012 WL 4754964, at *4 (W.D.Mich. Oct. 4, 2012) (recognizing, after citing *Witherow, Osborne, Marshall,* and *Morton,* that there are "a myriad of decisions holding that § 1448 cannot revive an action deemed dismissed under state law"). The Court finds persuasive the reluctance by other circuits to use § 1448 to obtain jurisdiction in cases that could be dismissed in state courts for defective service. Accordingly, the Court finds appropriate a refusal to allow § 1448 to resurrect a case deemed dead under Virginia civil procedure.

In *Marshall,* the Eighth Circuit addressed a situation where the court, in its discretion, could dismiss a personal injury action under state law or quash service and retain the case. 155 F.3d at 1032. The Eighth Circuit's decision ruled that the district court did not abuse its discretion in dismissing an action that was time-barred by a three-year statute of limitations. *Id.* at 1033. The court based its ruling on the fact that "[w]e do not believe that [§ 1448] can 'resurrect' a removed diversity case which would have been dismissed as time-barred had it remained in state court." *Id.* at 1033. Unlike the South Dakota rule providing the option of quashing service in lieu of dismissal, Virginia law mandates dismissal absent service

within one year or due diligence in attempting such service. Thus, the facts before the Court present an even stronger case for dismissal than that which the *Marshall* court affirmed.

In *Romo,* the Seventh Circuit upheld the district court's decision to dismiss the case for failure to timely serve under state law, explaining that "to hold otherwise would render the federal courts powerless to address the timeliness of service after removal." 250 F.3d at 1123. The district court initially dismissed the complaint for failure to effect timely service under federal procedural rules. 250 F.3d at 1121. When the plaintiffs sought relief under Rule 60(b)(6), the district court recognized that it should have applied state law but that would still have resulted in dismissal. *Id.* at 1121. The Seventh Circuit affirmed the district court's decision, finding no error in the application of the state procedural rule in its dismissal of the plaintiff's complaint. *Id.* at 1123. The Court finds persuasive the Seventh Circuit's preservation of a district court's power to evaluate untimely service.

The remaining circuit decisions further support the holdings in *Marshall* and *Romo* and thus the Court's decision here. In *Wallace,* the Tenth Circuit acknowledged that removal after the final date in which service could be timely would mandate the dismissal of the plaintiff's "stale" claims. 596 F.3d at 707 n. 2 (citing *Witherow,* 530 F.2d at 169 and *Marshall,* 155 F.3d at 1033). Although this statement was dicta—because Microsoft removed the action to federal court before the expiration of the service period under state law—the court plainly stated that "removal [after the expiration of the state service deadline] would not have rescued the stale tort claims." *Id.* In so noting, the Tenth Circuit unambiguously established the parameters under which § 1448 would and would not "rescue the stale tort claims,"

and Plaintiff clearly falls within the boundaries of claims that cannot be resuscitated by removal and § 1448.

Similarly, in *Osborne,* the First Circuit affirmed the district court's refusal to apply § 1448 to extend the time for service because doing so "would ignore Osborne's procedural deficiency in state court[ ] and effectively penalize Sandoz for exercising its removal right." 67 F.3d at 289; *see also Feliz v. MacNeill,* 493 Fed.Appx. 128, 131 (1st Cir.2012) (explaining that, in light of *Osborne,* "removal does not restart the clock for timely service" where the plaintiff failed to effect timely service under state law or demonstrate a good faith attempt to do so). The Third Circuit, in deciding *Witherow,* first proffered the position that "§ 1448 cannot be utilized to breathe jurisprudential life in federal court into a case legally dead in state court." 530 F.2d at 168. Despite having been superseded by statute in 1986 to the extent the decision concerned derivative jurisdiction, this language continued to be favorably cited and applied by a number of courts, including those in *Marshall* and *Wallace.*

In light of the opinions of this Court, the Courts of Appeal who have analyzed this issue, and the absence of binding precedent, the Court finds that removal does not afford Plaintiff additional time to serve Defendants where service completed prior to removal is defective at the time of removal. Accordingly, the Court finds that the issue must be conclusively decided solely by the application of Virginia law, which, as explained above, mandates dismissal for failure to timely serve. Therefore, the Court grants Defendants' Motions to Dismiss.

### 3. Virginia Procedure Does Not Burden Plaintiff's Federal Civil Rights

 The Court also finds unpersuasive Plaintiff's contention that Virginia law bur-

dens her federal rights. Rather than burden her rights, Virginia law actually gives Ms. Rice a longer filing period, one calendar year, instead of 120–day period provided had she initially filed her Complaint in federal court. Ms. Rice argues that under *Felder v. Casey,* 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988), Virginia's one-year service rule cannot defeat her ability to bring a federal civil rights claim. (Pl.'s Opp'n at 5.)

*Felder* is different from this case and does not persuade the court that Plaintiffs rights are burdened by Virginia state procedure. In *Felder,* the issue was whether plaintiff's failure to comply with a notice of claim statute, requiring him to follow certain additional procedures before suing the local government or officers in state court, constituted grounds for dismissal of the action. *Felder,* 487 U.S. at 134, 108 S.Ct. 2302. These procedures included requirements for plaintiffs to "notify the governmental defendant of the circumstances giving rise to the claim, the amount of the claim, and [ ]intent to hold the named defendant liable" and "refrain from filing suit for 120 days after providing such notice." *Id.* at 134, 108 S.Ct. 2302. The state court dismissed Felder's claims because he did not adhere to these rules. *Id.* at 134–137, 108 S.Ct. 2302. The Supreme Court found the state law in conflict with federal law because the state law imposed an exhaustion requirement that Congress never intended as a prerequisite to enforcing federal rights. *Id.* at 142–43, 108 S.Ct. 2302.

In contrast, the Virginia twelve-month service period does not restrict Ms. Rice's access to the courts or burden her federal civil rights. As mentioned earlier, Virginia's statute provides a longer period within which Ms. Rice could serve process on Defendants. Furthermore, Virginia's non-

suit statute provides an additional six months of time to file and serve a suit, provided a claimant adhered to the procedures set forth in the statute. Thus, Virginia's procedure, in providing thrice the time provided by federal law, without limitations akin to those in *Felder*, does not unlawfully burden Plaintiff's rights in a manner contrary to congressional intent. For these reasons, this Court finds *Felder* inapposite to Ms. Rice's situation.

### 4. Personal Jurisdiction

 Because Plaintiff failed to timely effect service on Defendants, the Court cannot exercise personal jurisdiction over Defendants. The Fourth Circuit unequivocally declared that, "absent waiver or consent, a failure to obtain proper service on the defendant deprives the court of personal jurisdiction over the defendant." *Koehler*, 152 F.3d at 306. As a result, improper service of process under Virginia law, mandating dismissal pursuant to Rule 3:5(e) of the Rules of the Supreme Court of Virginia, "renders a lack of in personam jurisdiction over a defendant." *Londeree*, 68 F.Supp.2d at 722. In light of the Court's ruling regarding Plaintiff's untimeliness of service, the Court also finds dismissal appropriate for lack of personal jurisdiction.

### III. CONCLUSION

The Court grants Defendants' Motion to Dismiss for insufficient service because Virginia law mandates dismissal where, as here, a plaintiff fails to effect timely service within one year of filing a complaint or demonstrate due diligence in attempting to do so. Furthermore, Defendants' removal of this action to federal court after the completion of untimely service does not afford Plaintiff the opportunity to revive a case that was procedurally dead in state court. For these reasons,

**IT IS HEREBY ORDERED** that Defendants' Motions to Dismiss (Docs. 4, 6, 9) are **GRANTED.** Accordingly, Plaintiff's Complaint is hereby **DISMISSED with prejudice.**

**IT IS SO ORDERED.**

